IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LUIS CALVILLO, individually and on behalf of all others similarly situated | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 5:15-cv-01165 |
| J&M TANK LINES, INC. | § § § | |
| Defendant. | § § | JURY TRIAL DEMANDED |

## PLAINTIFFS' ORIGINAL COMPLAINT

### SUMMARY

1. J&M Tank Lines (herein "J&M") does not pay its sand haulers overtime as required by the New Mexico Minimum Wage Act (NMMWA). J&M also fails to pay the minimum wage as required by the Fair Labor Standards Act (FLSA) and the NMMWA. Instead, J&M pays them a job rate, piece rate and shift rate, with no overtime pay. Because these workers work far more than 40 hours a week, Luis Calvillo and the other sand haulers are entitled to recover, under the NMMWA and FLSA, their unpaid wages as well as other damages.

### JURISDICTION AND VENUE

2. This Court has federal question jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

3. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' state claim New Mexico Minimum Wage Act ("NMMWA"), N.M.S.A.4 § 50-4-19 et seq.

1

Like their FLSA claims, Plaintiff's NMMWA claims require them to show that they worked more than 40 hours in a workweek without pay. Plaintiff also has to show that he was not paid minimum wage for all hours worked. As such, the claims arise "from a common nucleus of operative fact." See *United Mine Works of Am. v. Gibbs*, 383 U.S. 715, 625 (1966).

4. Venue is proper in this district because J&M maintains offices, and engages in operations in, this District and Division. Additionally, Plaintiff performed a substantial amount of their unpaid work for J&M in this District and Division.

## PARTIES

5. Luis Calvillo resides in El Paso, Texas. His written consent to join this lawsuit is attached.

6. J&M is a Georgia corporation which does business, and maintains offices, in the state of Texas. J&M may be served through its registered agent, Jim Pickens, at 1215 Bankhead Hwy West, Birmingham, Alabama 35204 or wherever it may be found.

7. J&M is an oil field service company. Its employees routinely use, handle, sell, and/or work on vehicles, telephones, and hand tools.

8. J&M has 13 terminals located in Texas, Georgia, Alabama, and South Carolina. *See* [http://www.jmtank.com/index.php/services](http://www.jmtank.com/index.php/services).

9. According to its website, J&M has a fleet of over 300 tractors and over 400 tanks. *See* http://www.jmtank.com/index.php.

10. On its website, J&M advertises that it sells industrial grade commodities such as lime, calcium carbonate, cement, and sand; along with food grade flour, agricultural grade salt, and liquid bulk glue. *See* [http://www.jmtank.com/index.php/services](http://www.jmtank.com/index.php/services).

11. These items were produced for interstate commerce or actually traveled in interstate commerce.

12. J&M is a member of several state and national truck associations and truck safety councils. *See http://www.jmtank.com/index.php/about-us*.

13. J&M is covered by the FLSA and has been for each of the last 3 years. J&M is therefore obligated to pay its employees minimum wage under the FLSA.

14. The "Minimum Wage Class" consists of all J&M sand haulers employed within the last 3 years (including, but not limited to, all members of the New Mexico Class).

15. The "New Mexico Class" consists of all J&M sand haulers employed in New Mexico within the last 3 years.

## FACTS

16. Plaintiff incorporates by reference the factual allegations contained in the preceding paragraphs.

17. J&M Tank Lines, Inc. is a company that provides commodities such as sand, calcium carbonate, lime, flour, and salt.

18. J&M is headquartered in Birmingham, Alabama but has locations in Texas and Georgia.

19. Plaintiff and class members worked for J&M out of Odessa, Texas.

20. Luis Calvillo worked for J&M as a sand hauler from December 2014 to August 2015. His job duties are typical of a J&M sand hauler as described herein. Calvillo has worked for J&M in Texas and New Mexico.

21. J&M hired Plaintiff and class members to picking up sand from various locations in Texas and transporting them to oil drilling sites for use in fracking operations in Texas and New Mexico.

3

22. The sand is used a proppant – a solid material designed to keep an induced hydraulic facture open during (or after) a fracturing treatment.

23. Sand is a critical part of the hydraulic fracturing process.

24. Sand haulers are an integral part of the hydraulic process.

25. The drilling operation takes place 24 hours a day. It is essential to have the right amount of sand ready and available to load into the blender used to mix the propellant into the fracking fluid.

26. J&M's customers rely on Plaintiff and class members to be ready on site with their load of sand and be able to move up the line and unload their sand at the right time and the right location. The sand is unloaded into the "sand kings" which are huge containers that hold the sand during drilling operations.

27. The sand haulers' work is an essential part of the well stimulation production process.

28. J&M required Plaintiff and class members to wait at the drilling site until it was their turn to unload their sand.

29. J&M required Plaintiff and class members to sit in their trucks and be on standby for up to 24 hours, 48 hours, or more at the drill site and be prepared to unload their sand.

30. According to company policy, sand haulers were paid a fixed amount per job and per load. These payments constituted a job rate and a piece rate respectively under the FLSA.

31. In addition, sand haulers were paid an hourly rate for the time they spent on standby, but only up to 12 hours.

32. Sand haulers were not paid for standby time of more than 12 hours.

33. Many of the drill sites that J&M sent Plaintiff and Class members to were in New Mexico. Plaintiff performed work in New Mexico on a weekly basis.

34. The drive from the shop in Odessa to the drill sites in New Mexico was at least 3 hours each way.

35. Sand haulers were not paid for drive time to and from the drill site.

36. With respect to travel time, employees are entitled to compensation for travel time that is a "principal activity" of the employee. *Vega v. Gasper*, 36 F.3d 417 at 424 (5th Cir. 1994).

37. Plaintiff's drive time between the shop and the drill sites was performed as part of the regular work of the employees in the ordinary course of business of J&M.

38. The travel time between the shop and the drill sites was necessary to the business and is performed by the employees, primarily for the benefit of J&M.

39. Such travel is not ordinary home to work travel, which is generally not a "principal activity" and thus non-compensable according to the Portal-to-Portal Act.

40. Because transporting the sand to the drill site was a principal activity of the sand haulers, it constituted compensable work time under the FLSA.

41. No advanced degree is required to become a sand hauler. In fact, J&M regularly hires sand haulers who have only a high-school diploma (or less).

42. Plaintiff does not have an advanced degree. Being a sand hauler does not require specialized academic training as a standard prerequisite.

43. To the extent sand haulers make "decisions," the decisions do not require the exercise of independent discretion and judgment.

44. Instead, sand haulers apply well-established techniques and procedures.

45. If sand haulers evaluate sand quality, they do so using established standards.

46. Sand haulers do not set sand quality standards.

5

47. Sand haulers are not permitted to deviate from established sand quality standards.

48. Sand haulers are blue collar workers. They rely on their hands, physical skills, and energy, to perform manual labor in the oilfield.

49. Sand haulers work long hours. While in the field, sand haulers regularly work more than 12 hours in a day, 7 days a week.

50. Sand haulers regularly work more than 90 hours in a week. As an example, Calvillo averaged 12 (or more) hours per day, each day that he worked.

51. However, J&M does not pay its sand haulers overtime under the New Mexico Minimum Wage Act ("NMMWA") for hours worked in excess of 40 in a workweek. J&M does not pay sand haulers for compensable travel time, or for standby time of more than 12 hours.

52. As a result of J&M's pay policies, Plaintiff and the New Mexico Class were denied the overtime pay required by state law.

53. Workers who are exempt from overtime under the FLSA due to the Motor Carrier Act exemption, may still be eligible for overtime pay according to state law such as the NMMWA. *Pettis Moving Co. v. Roberts*, 784 F.2d 439, 441 (2d Cir. 1986).

54. As a result of J&M's pay policies, Plaintiff, the New Mexico Class, and the FLSA Class were denied the minimum wage pay required by state and federal law.

55. J&M keeps records of the hours its sand haulers work.

56. These records reflect the fact that Plaintiff and the FLSA Class worked more than 40 hours a week.

57. Plaintiff seeks compensation for unpaid minimum wage under the FLSA and the New Mexico Minimum Wage Act, as well as unpaid overtime under the NMMWA.

**COLLECTIVE & CLASS ACTION ALLEGATIONS**

58. Plaintiff incorporates by reference the factual allegations contained in the preceding paragraphs.

59. In addition to the Plaintiff, J&M employed dozens of other sand haulers within the past 3 years.

60. J&M paid (and pays) all its sand haulers a combination job rate, piece rate and hourly rate.

61. This is the same pay system J&M applied to the Plaintiff.

62. The FLSA Class members perform the job duties typical of a J&M sand hauler.

63. The FLSA Class is similarly situated to the Plaintiff.

64. The FLSA Class should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

65. Plaintiff brings state law claims on behalf of all sand haulers employed in New Mexico pursuant to Fed. R. Civ. P. 23 (the "New Mexico Class").

66. J&M employed at least 40 sand haulers in New Mexico during the past 3 years.

67. These workers are geographically disbursed, residing in other states (such as Louisiana and Texas).

68. Because these workers do not have fixed work locations, sand haulers work in different states across the country in the course of a given year.

69. For example, Calvillo worked at least one workweek of more than 40 hours in both New Mexico and Texas from June 2015 to July 2015.

70. Plaintiff will fairly and adequately protect the interests of the FLSA and New Mexico Class.

71. Plaintiff retained counsel who is experienced and competent in class action and employment litigation.

72. Plaintiff has no relevant interest contrary to, or in conflict with, the members of the classes.

73. Like each member of the proposed classes, Calvillo has an interest in obtaining the unpaid overtime wages owed under state law and unpaid minimum wages owed under both state and federal law.

74. A collective/class action suit, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

75. Absent these actions, many members of the classes likely will not obtain redress of their injuries and J&M will retain the proceeds of its violations of the FLSA and the applicable state labor law.

76. Furthermore, even if particular members of the classes could afford individual litigation against J&M, it would be unduly burdensome to the judicial system.

77. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

78. There is a well-defined community of interest in the questions of law and fact affecting the New Mexico Class as a whole.

79. The questions of law and fact common to the New Mexico Class predominate over any questions affecting solely the individual members.

80. Among the common questions of law and fact are:

    a. Whether J&M had an official policy of not paying Sand Hauler for the first 8 hours of their shift;

    b. Whether J&M requirements that the Sand Haulers to wait in their truck to until their sand can be unloaded is considered engaged to wait or wait to engage;

    c. Whether J&M employed members of the New Mexico Class within the meaning of the applicable statutes, including the FLSA;

    d. Whether Sand Haulers were improperly classified by J&M as exempt from overtime compensation under the NMMWA;

    e. Whether J&M's decision to classify sand haulers as exempt was made in good faith;

    f. Whether J&M's violation of the FLSA and/or the various state wage and hour laws was willful;

    g. Whether J&M failed to pay Calvillo, the FLSA Class, and the New Mexico Class overtime pay due to them by virtue of their uniform designation as exempt; and

    h. Whether J&M kept adequate records of the hours worked by its Sand haulers.

81. Plaintiff's claims are typical of the claims of members of the classes.

82. Plaintiff, the FLSA Class, and the New Mexico Class, have all sustained damages arising out of J&M's wrongful and uniform employment policy.

83. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective or class action.

**FIRST CAUSE OF ACTION:**
**OVERTIME VIOLATION UNDER NMMWA**

84. Plaintiff incorporates by reference the factual allegations contained in the preceding paragraphs.

85. By failing to pay Plaintiff and the New Mexico Class overtime at 1 and ½ times their regular rates, J&M violated the New Mexico Minimum Wage Act, N.M.S.A. § 50-4-19 *et seq*.

86. J&M owes Plaintiffs and the Class overtime wages equal to 1 and ½ their regular rates for each overtime hour worked during the last three years.

87. J&M knew, or showed reckless disregard for whether, its failure to pay overtime violated the NMMWA.

88. J&M's failure to pay overtime to Plaintiff and the Class is willful.

89. J&M owes Plaintiff and the Class an amount equal to all unpaid overtime wages as well as liquidated damages.

90. Plaintiff and the Class are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

91. Defendants' Sand Haulers routinely use hard hats, gloves, safety glasses, ear protection, hoses, hammers, Kenworth tractor, PeopleNet satellite tracking system, in performing their job duties of hauling specialized fracking sand from Texas to New Mexico. Thus the employees used, handled, sold, and/or worked on, goods or materials that were produced for or traveled in interstate commerce.

**SECOND CAUSE OF ACTION:**
**VIOLATION OF THE MINIMUM WAGE PROVISION OF**
**THE FLSA AND NMMWA (FLSA CLASS)**

92. Plaintiff incorporates by reference the factual allegations contained in the preceding paragraphs.

10

93. The conduct alleged in this Complaint violates the FLSA and New Mexico Minimum Wage Act (NMMWA), NMSA § 50-4-19 *et seq.*

94. J&M was and is an "employer" within the meaning of the FLSA and the NMMWA.

95. At all relevant times, J&M employed Plaintiff, and each of the New Mexico Class members, as an "employee" within the meaning of the FLSA and the NMMWA.

96. Both statutes require employer like J&M to pay minimum wage to all non-exempt employees.

97. Plaintiff and the other New Mexico Class members are non-exempt employees who are entitled to be paid no less than minimum wage for all hours worked.

98. Within the applicable limitations period, J&M had a policy and practice of failing to pay minimum wage pay to the FLSA Class members for all their hours worked.

99. As a result of J&M's failure to pay overtime to Plaintiff and the FLSA Class members at a rate not less than the minimum wage of $7.50 for all hours worked in New Mexico, and not less than $7.25 for other hours worked, J&M violated the NMMWA and the FLSA.

100.    Plaintiff and the other New Mexico Class members seek the amount of their underpayments based on J&M's failure to minimum wage, an equal amount as liquidated damages, and such other legal and equitable relief from J&M's willful conduct as the Court deems just and proper.

101.    Plaintiff and the New Mexico Class members also seek recovery of attorneys' fees and costs of this action to be paid by J&M, as provided by the NMMWA.

**THIRD CAUSE OF ACTION:
QUANTUM MERUIT**

102. Plaintiff incorporates by reference the factual allegations contained in the preceding paragraphs.

103. Quantum meruit is an equitable remedy based upon an implied promise to pay for benefits received. *Wohlfahrt v. Holloway*, 172 S.W.3d 630, 634 (Tex.App.—Houston [14th Dist.] 2005).

104. In order to prove quantum meruit, a party must show that (1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) which services and materials were accepted by the person sought to be charged and used and enjoyed by him; (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged. *Id*.

105. Mr. Calvillo rendered valuable services in the course of their employment at J&M Tanklines.

106. Defendant accepted these services, and used and enjoyed them when operating J&M, under such circumstances as put J&M on notice that Plaintiff expected to be compensated for such services and materials.

107. The amount paid by J&M to date does not reflect the reasonable value of the services rendered or the materials furnished.

108. Plaintiff is entitled to receive the reasonable value of his services.

## JURY DEMAND

109. Plaintiff demands a trial by jury all on issues so triable.

## PRAYER

Plaintiff prays for relief as follows:

a. An order allowing this action to proceed as a collective action under the FLSA and directing notice to the FLSA Class;

b. An order certifying the New Mexico Class as a class action pursuant to Rule 23 of the FRCP;

c. Judgment awarding Plaintiff and the FLSA Class all unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA;

d. Judgment awarding Plaintiff and the New Mexico Class all unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the NMMWA;

e. An award of post-judgment interest on all amounts awarded at the highest rate allowable by law; and

f. All such other and further relief that Plaintiff, the FLSA Class, and/or the New Mexico Class are justly entitled.

Respectfully submitted,

TRAN LAW FIRM L.L.P

/s/ Trang Q. Tran
Trang Q. Tran
Federal I.D: 20361
Texas Bar No. 00795787
Alecia D. Best
Federal I.D. 2591730
Texas Bar No. 24092129
9801 Westheimer Rd, Suite 302
Houston, Texas 77042
Telephone: (713) 223-8855
Facsimile: (713) 623-6399

**ATTORNEYS FOR PLAINTIFFS**